**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  08-23335-CIV-UNGARO/SIMONTON**
**(06-20319-CR-UNGARO)**

**LEIGH JESSE QUINTO,**

      **Movant,**

**v.**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

      Presently pending before this Court is Movant Leigh Jesse Quinto's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (DE # 1).  This matter is referred to the undersigned Magistrate Judge (DE # 3).  The motion is fully briefed (DE ## 8, 17).  In addition, the Government and the Movant have both filed Supplemental Authority in the matter (DE ## 18, 32).  An evidentiary hearing was held on the Motion.  For the reasons stated below, the undersigned recommends that the Motion be DENIED.

      I.      **BACKGROUND**

          A.      **Indictment, Trial & Sentencing**

      On May 19, 2006, the Defendant Leigh Jesse Quinto was charged in two counts of an eight-count Indictment alleging that he and five co-defendants engaged in a conspiracy, between 1991 through March 6, 2006, to possess with intent to distribute at least five (5) kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); and, that on or about April 27, 2005, he knowingly and intentionally distributed cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 5)[1] (DE # 7-cr).[2]

_____

      [1]  Mr. Quinto was charged in the Indictment along with James Colton Wells, Vincent Scarpati, Dean Francis Fanning, Anton Kolovrat and Richard Schwartz.  All five

On November 7, 2006, the matter proceeded to a jury trial wherein Mr. Quinto was represented by attorney Fred Haddad.[3]  Prior to the commencement of trial, an additional attorney, Bruce Zimet, filed a Notice of Appearance which stated, "I will be appearing for the purposes of cross examination and preparation of a potential conflict witness and a 'Chinese Wall' has been erected between counsel regarding this potential conflict." (DE # 34-cr).  It is undisputed that this "conflict witness" was Michael Schwartz.

At trial, Richard Losenbeck, a detective with the City of Hollywood Police Department, testified that in January of 2005, Michael Schwartz, a confidential police informant, introduced him to Jesse Quinto and James Wells, one of Mr. Quinto's co-defendants.[4]  He further testified that he, along with another officer, Detective Daly, had a conversation with Jesse Quinto and Mr. Wells wherein Mr. Wells provided Detective Daly with a small baggie of powder cocaine, although Mr. Quinto did not touch the baggie.  According to Detective Losenbeck, sometime over the next few weeks, he purchased cocaine from Mr. Wells while Mr. Quinto was present.

Immediately after Det. Losenbeck testified, the Government called Michael Schwartz, the confidential informant as its next witness.  On direct examination, Mr.

---

Defendants pled guilty, and all but Anton Kolovrat testified against Quinto at trial.

[2]  All references to docket entry numbers from the Movant's underlying criminal matter (Case No: 06-20319-CR-UU) will be designated with the suffix "cr".  Thus, for example, docket entry # 7 filed in that case will be referenced herein as (DE # 7-cr).

[3]  Mr. Haddad filed a Notice of Permanent Appearance on May 12, 2006, in which he acknowledged that this appearance was unconditional and included the responsibility of representing Mr. Quinto through appellate proceedings, unless relieved by Court Order (DE # 5-cr).

[4]  Michael Schwartz, the confidential informant at issue in the instant 2255 Motion should not be confused with the Movant's co-Defendant at trial Richard Schwartz.  Michael Schwartz was not a Defendant in Mr. Quinto's underlying criminal action.

Schwartz testified that he previously had a cocaine problem and had been arrested for cocaine trafficking several years earlier.  He admitted that he made a deal with the State to assist the police in connection with drug investigations.  He testified that he knew James Wells, a co-defendant of Mr. Quinto's, who frequented the night club Solid Gold, where Mr. Schwartz worked; and, he stated that he introduced Mr. Wells to Detective Dave Daly in January 2005.  Mr. Schwartz testified that at some point he met with Mr. Wells at Mr. Quinto's house in Hollywood and Mr. Wells gave Mr. Schwartz cocaine.  A few months later, Mr. Schwartz called Mr. Wells' telephone in an attempt to again obtain cocaine, and his call was returned by Mr. Quinto rather than Mr. Wells.  According to Mr. Schwartz, Mr. Quinto met with Mr. Schwartz but refused to sell him cocaine because Mr. Schwartz only had $50.00, and Mr. Quinto stated that "James doesn't sell $50 worth."  Mr. Schwartz testified that during that exchange he saw an envelope on the seat of Mr. Quinto's car but that he did not know what was in it, and denied that Mr. Quinto showed him any baggies.

The prosecutor, after stating to the Court that he had a right to impeach his own witness, attempted to impeach Mr. Schwartz by asking him if he recalled making a statement to the prosecutor that Mr. Quinto had shown him a baggie.  Mr. Schwartz reiterated that he saw an envelope and testified that he did not recall telling the prosecutor that Mr. Quinto showed him a baggie. Ultimately, after repeated questioning by the prosecutor, Mr. Schwartz testified that Mr. Quinto told him that there was cocaine in the envelope, but never showed him the contents of the envelope.[5]

---

[5] During the course of the direct examination, Mr. Haddad made several objections to questions the prosecutor asked including questions which were designed to impeach Mr. Schwartz's testimony with respect to whether Mr. Quinto had shown him a baggie of cocaine.  Those objections were sustained (DE # 235-cr at 45-46).

The cross-examination of Mr. Schwartz was conducted by Mr. Haddad who asked very few questions.  Basically, Mr. Haddad only inquired about Mr. Schwartz's position at Solid Gold, the nature of the activities that the patrons participated in at Solid Gold and the circumstances surrounding Schwartz's introduction of the policeman to Wells.  Mr. Haddad also inquired briefly about the interaction between Mr. Quinto and Mr. Schwartz in March of 2005.

After Mr. Schwartz testified, Detective Daly testified and confirmed that, while working undercover, he met Mr. Quinto at Solid Gold with Detective Wells.  Some time after an initial purchase of cocaine was made by Officer Daly from Mr. Wells, Officer Daly spoke to Mr. Wells regarding a meeting to purchase additional cocaine, and Mr. Wells told him that he would be out of town but that his partner would take care of Officer Daly.  Thereafter, when Officer Daly called the telephone number at which he usually called Mr. Wells, Mr. Quinto answered the phone and the two made arrangements to meet so that Detective Daly could purchase cocaine.  The phone conversations between Officer Daly and Mr. Quinto were recorded.  On April 21, 2005, Officer Daly and Mr. Quinto met and completed a cocaine transaction that was video taped by other law enforcement officers in the vicinity, as well as recorded by a concealed microphone worn by Officer Daly during the transaction.  Mr. Quinto sold the undercover officer 10.6 grams of cocaine for $660.00.  This transaction formed the basis for Count 5 of the Indictment.

Thereafter, four of Mr. Quinto's Co-Defendants testified against him.  Mr. Wells testified extensively about his and Mr. Quinto's involvement in the drug trafficking business.  He also testified about his friendship with Mr. Quinto, how they first met, and the circumstances surrounding Mr. Quinto's initial participation in drug trafficking.

In the closing argument, Mr. Haddad argued that Mr. Quinto's co-Defendants all

had a motive for testifying against Mr. Quinto related to their plea agreements with the Government.  Mr. Haddad similarly argued that Michael Schwartz also had to "sing the government's song", which he did when he testified against Mr. Quinto.

The jury returned a verdict of not guilty against Defendant Quinto on Count I, conspiracy to possess with intent to distribute cocaine, and found Defendant Quinto guilty of Count 5 (DE # 132).  Thereafter, Mr. Haddad filed a Renewed Motion for New Trial wherein he raised issues related to the impropriety of the admission at trial, pursuant to Fed. R. Evid. 404(b), of evidence of Mr. Quinto's prior convictions (DE ## 129, 130-cr). That Motion was denied (DE # 137-cr).

On February 22, 2007, the Defendant was sentenced to serve 240 months of imprisonment, the statutory maximum penalty, followed by three years of supervised release, and a $500,000.00 fine (DE # 181).[6]  However, due to the acquittal on Count 1, the Government abandoned its forfeiture count against Mr. Quinto, which involved the potential forfeiture of significant monies and property in Bulgaria owned by the Defendant.

B.    Post-Sentencing Proceedings

On March 7, 2007, Mr. Quinto filed a "Writ of Error Affidavit" in this Court wherein he asserted, and supported with references to the Bible and the U.S. Constitution, that the proceedings against him were improper because, among other things,  the court created a public commercial corporation, "LEIGH JESSE QUINTO", and then sought to impose sentence on his physical being (DE # 193-cr).  Mr. Quinto also contended that he

---

[6]  The Court issued an Amended Judgment on July 27, 2007 wherein the Court (DE # 275-cr) changed the phrase "defendant pleaded guilty..." contained in the first Judgment to "defendant was found guilty."  The Court did not change the sentence or any other substantive portion of the Judgment.

was denied procedural due process in violation of several federal statutes; and that he improperly had a debt assessed against him.

On March 8, 2007, Counsel for the Defendant, Fred Haddad, filed an Unopposed Motion to Withdraw as Attorney of Record (DE #194-cr).  In that Motion, Counsel stated that the Defendant had advised him that the Defendant wanted to represent himself. Counsel suggested that the Court hold a hearing to determine whether the Defendant was capable of making that decision (DE # 194-cr, at ¶¶  2-3). The Motion was referred by Judge Ungaro to Magistrate Judge John O'Sullivan on March 13, 2007 (DE # 198-cr).

On March 21, 2007, Magistrate Judge O'Sullivan held a hearing on the Motion to Withdraw wherein the Defendant was placed under oath and questioned by the Court. The Magistrate Judge concluded that the Defendant denied that he wanted to represent himself and failed to demonstrate a knowledge of the law, rules of procedure, and/or courtroom decorum (DE # 206-cr).  The Magistrate Judge therefore determined that the Defendant did not demonstrate a knowing, voluntary and intelligent desire to represent himself and denied defense counsel's Motion to Withdraw.

On March 28, 2007, Counsel for the Defendant objected to the ruling of the Magistrate Judge and filed a Motion to Review the Magistrate Judge's Order which directed  trial counsel to continue to represent the Defendant on appeal (DE # 215-cr).

On April 16, 2007, Mr. Quinto filed, pro se, four additional documents as follows: 1) Notice of Termination of Attorney (DE # 227-cr); 2) Demand for Affidavit of Costs (DE # 228-cr); 3) Petition for Claiming and Exercising God-Given Rights Secured By the Constitution and Requiring the Presiding Judge for Ruling Upon this Petition and All Public Officers of This Court for Upholding Said Rights (DE # 229-cr); and 4) Petition for Demanding for the Court for Read All Pleadings (DE # 230-cr).

On April 23, 2007, Counsel for the Defendant filed a Renewed Motion to Withdraw [Unopposed] and Motion for Ruling on Previously Filed Motion to Review Magistrate Decision (DE # 231-cr).  The renewed motion added, as grounds for withdrawal, an irreconcilable conflict between counsel and Mr. Quinto.  On April 26, 2007, the District Judge referred the "defendant's Renewed Unopposed Motion to Withdraw Counsel of Record" to the Magistrate Judge (DE # 242-cr).

On May 10, 2007, the Magistrate Judge held a second hearing on the motion to withdraw, and after questioning the Defendant at length about whether he wanted to represent himself on appeal and if he understood the law and procedures related to an appeal, granted the Motion (DE ## 246, 248-cr).

C.    Pro Se Appeal

The Defendant appealed his conviction to the Eleventh Circuit Court of Appeals asserting that: 1) the District Court lacked subject matter jurisdiction over the offense; 2) Defendant's Fifth Amendment grand jury right was violated; 3) Defendant's 240-month sentence was procedurally and substantively unreasonable; 4) Defendant was denied his Sixth Amendment right to effective assistance of counsel; 5) the District Court improperly sentenced him as a career offender absent notice of prior convictions under 21 USC § 851; and, 6) the District Court's Judgment and Conviction Order was inaccurate (DE # 295-cr).  On February 5, 2008, the Eleventh Circuit Court of Appeals affirmed the Defendant's conviction.  Significantly, the Court rejected Quinto's argument that his 240-month sentence was procedurally and substantively unreasonable, and stated that the Defendant was sentenced as a career offender pursuant to U.S.S.G. § 4B1.1 because he had two prior controlled substance felony convictions that resulted in an offense level of 32 and a criminal history category of VI, which provided an advisory guideline range of

7

210-240 months' imprisonment.  The reviewing Court also found that the District Court appropriately considered the § 3553(a) factors in determining the Defendant's sentence, particularly Mr. Quinto's extensive criminal history.[7]  The Eleventh Circuit declined to consider the ineffective assistance of counsel claim, noting that "testimony from counsel is usually necessary with respect to claims and the district court did not have an opportunity to develop a factual record for consideration by this Court", (DE # 295-cr at 14).

## II.   MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255[8]

The Movant has filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255 seeking to have his conviction set aside alleging: 1) his trial counsel had a conflict of interest that Mr. Quinto did not knowingly and intelligently waive; 2) the district court knew or reasonably should have known of the conflict of interest, but failed to hold a hearing to determine whether Mr. Quinto understood the conflict and voluntarily waived

---

[7]  The presentence report submitted to the Court prior to sentencing indicates that Mr. Quinto had several adult convictions prior to the conviction in this matter.  At age 19 in 1992, Quinto faced a Court-Martial related to distribution of cocaine and LSD at Homestead Air Force base, and may have faced additional charges related to the sale of a stolen handgun.  Quinto was found or pled guilty to the charges, served two years of confinement, and was released in April 1994.  In 1998, Quinto was arrested for possession with intent to sell or deliver 20 grams of cocaine.  In 1999, Quinto pled guilty to cocaine related charges after selling 1 gram of cocaine to an undercover officer.  In 2002, he was arrested and pled no contest to grand theft related to the attempted purchase of $200,000 worth of stolen audio and lighting equipment for $30,000, and creating a false bill to make the sale appear legitimate.  In 2004, he was arrested and pled guilty to possession of 3 grams of cocaine.  He also has past driving related offenses.

[8]  It is clear that the instant Motion to Vacate was timely filed.  As stated in Movant Quinto's Memorandum Regarding Limitations Period (DE # 11), Mr. Quinto's conviction and sentence were affirmed by the Eleventh Circuit Court of Appeals on February 5, 2008 and this Motion to Vacate was filed on December 2, 2008, well within the one-year limitations period.

the right to counsel; 3) the Magistrate Judge exceeded his jurisdiction when, without Mr. Quinto's consent, he entered an order that Mr. Quinto could proceed pro se with his direct appeal; and 4) Mr. Quinto received ineffective assistance of counsel when trial counsel failed to object properly to the improper admission of evidence of Mr. Quinto's prior convictions, pursuant to Fed.R.Evid. 404 (b) (DE # 1).

In Response, the Government asserted that the Movant was unable to demonstrate that he received ineffective assistance of counsel due to a conflict of interest by his trial counsel, primarily because Mr. Haddad's trial strategy was effective as evidenced by the fact that Mr. Quinto was acquitted on the conspiracy charge which was the focus of Mr. Schwartz's testimony.  In addition, the Government argued that the evidence that was introduced against Mr. Quinto, pursuant to Fed. R. Evid. 404(b) was properly admitted; and, that the Magistrate Judge properly ruled on the motion to withdraw, filed by Mr. Quinto's counsel, and correctly concluded that Mr. Quinto was capable of representing himself on appeal.

In his Reply, Mr. Quinto argued that the Court had a duty pursuant to *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975), to hold a hearing to evaluate whether Mr. Quinto understood the nature of the conflict of interest, and that the failure to do so mandates that Mr. Quinto be granted relief under § 2255.  Mr. Quinto also argued that, pursuant to the applicable case law, he need not make a showing of prejudice in order to be entitled to relief where an attorney labors under an actual conflict of interest, rather, he is required to demonstrate only that his counsel's performance was "adversely affected". Finally, Mr. Quinto re-asserted that the Magistrate Judge exceeded his authority and incorrectly ruled that Mr. Quinto could represent himself on appeal.

III.   **FINDINGS OF FACT** [9]

On March 10, 2010, the undersigned granted the Movant's request for an evidentiary hearing, limited to the issue of whether Mr. Quinto was denied effective assistance of counsel at trial due to an actual conflict that adversely affected his attorney's performance.  The undersigned set the matter for oral argument on the other issues raised in the Movant's Motion (DE # 22).

At the evidentiary hearing, the Movant called as his only witness Mr. Fred Haddad, the Defendant's trial counsel, to testify.  The undersigned finds that Mr. Haddad was a credible witness at the Motion to Vacate hearing.  Throughout the hearing, Mr. Haddad provided plausible and consistent responses to questions from Counsel and from the Bench.  As such, the undersigned credits Mr. Haddad's testimony and finds that it accurately sets forth the facts relevant to the pending Motion.

Mr. Haddad has been an attorney for thirty-six years who specializes in criminal law.  He is licensed to practice law in Florida, and has been admitted in the Southern District of Texas and the Western District of Tennessee, as well.

Mr. Haddad first represented Michael Schwartz, the confidential informant, after he was arrested by the State of Florida authorities for trafficking in cocaine in February of 2002.  Mr. Haddad continued to represent Mr. Schwartz throughout his State case, which was resolved when Mr. Schwartz entered a guilty plea in July 2004, and was sentenced to probation on February 11, 2005.  As part of his probation, Mr. Schwartz was ordered by the Court to "continue to cooperate and testify truthfully when called upon. . .". *(DE # 34, Hr'g. Ex. # 2).*  During the course of his representation of Mr. Schwartz, Mr. Haddad filed a

---

[9]  To the extent that these Findings of Fact are more properly considered to be Conclusions of Law, and vice versa, the undersigned intends for them to be treated as such.

motion to dismiss, filed a motion to suppress, and scheduled depositions, although he did not recall if he took the depositions himself or if someone in his office attended the depositions instead.  Mr. Haddad discussed with Mr. Schwartz the charges against him, as well as the possible sentences that he was facing.  Mr. Haddad, however, did not negotiate the substantial assistance or cooperation agreement between Mr. Schwartz and the State; but rather recalled that Mr. Schwartz handled that portion of his case on his own, possibly with the assistance of a relative who was an FBI agent.  Mr. Haddad generally did not become involved with cooperation agreements and recalled that Mr. Schwartz had established a rapport with the State prosecutor during the times in court when they were waiting for the Judge to call his case.  Mr. Schwartz asked Mr. Haddad if he objected to Mr. Schwartz reaching a cooperation agreement; and, Mr. Haddad told Mr. Schwartz to go ahead if that was what he wanted to do.

Mr. Haddad did not learn about Mr. Schwartz's family and his background during his representation of Mr. Schwartz and only saw him at calendar calls.  Although he was aware that Mr. Schwartz had heart health issues, he did not recall speaking to him about his drug or alcohol use.  Mr. Haddad had no independent recollection of a cooperation agreement being discussed before the State Court Judge, but he was present at Mr. Schwartz's sentencing in State court when the prosecutor requested the Court to include, as a special condition of probation, Mr. Schwartz's continued cooperation with law enforcement.[10]

---

[10]  At the evidentiary hearing, Counsel for the Movant introduced a transcript of Mr. Schwartz's sentencing in State Court which reflected that the State informed the court of Mr. Schwartz's cooperation and assistance with a particular law enforcement investigation. (Movant Ex. 1 at 3-4).  The transcript also supports Mr. Haddad's lack of involvement with the cooperation agreement, since he states at the beginning of the sentencing that the State was requesting "probation for Mr. Schwartz, who I _guess_ has been cooperating"(Movant Ex. 1 at 2) (emphasis added).

Mr. Haddad did not learn that Mr. Schwartz had introduced two detectives to Mr. Quinto and his co-defendant Mr. Wells during the pendency of Mr. Schwartz's case. Rather, in May 2006, he learned from the prosecutor at Mr. Quinto's pretrial detention hearing or shortly thereafter, that Mr. Schwartz was a potential witness against Mr. Quinto.  At that time, it did not appear that Mr. Schwartz was a significant witness since Mr. Haddad was also informed by the prosecutor and the other defense attorneys that Mr. Quinto's co-defendants were planning to cooperate with the Government and testify against Mr. Quinto.  However, when he was informed that Mr. Schwartz was a likely witness in the case, he realized that there was a potential conflict with his representation of Mr. Quinto.  Therefore, after speaking to Mr. Quinto, Mr. Haddad arranged for Mr. Zimet to file a notice of appearance in Mr. Quinto's case.[11]  After Mr. Haddad spoke to Mr. Quinto and informed him that he had previously represented Mr. Schwartz, Mr. Quinto, nevertheless wanted Mr. Haddad to represent him.  Mr. Haddad explained that Mr. Quinto was "a little different than other clients because he had a relationship with my son, and some friends of his were friends of my son."  Thereafter, the prosecutor told Mr. Haddad that he did not intend to use Mr. Schwartz as a witness against Mr. Quinto.  That status changed shortly before the trial, when the prosecutor informed Mr. Haddad that Mr. Schwartz would be called as a witness, but that he had waived any conflict.  The prosecutor specifically stated that Mr. Schwartz had told him to tell Mr. Haddad that Mr.

---

[11]  Mr. Quinto denies in his papers that Mr. Haddad ever informed him of his prior representation of Mr. Schwartz and/or that a potential conflict related to that previous representation may have existed.  However, Mr. Quinto did not testify at the evidentiary hearing, did not submit an affidavit to support this contention; and, in no other way rebutted Mr. Haddad's unequivocal testimony that he did notify Mr. Quinto of the potential conflict.  The undersigned finds for purposes of the instant analysis that Mr. Quinto was only aware of the potential conflict in general terms, but that there was no detailed discussion of the potential conflict, or how it could potentially have an adverse effect on the representation by Mr. Haddad.

Schwartz did not care if Mr. Haddad cross-examined him at Mr. Quinto's trial.

Mr. Haddad thought that the issue regarding the potential conflict had been presented to the trial court in Mr. Quinto's case, but admitted that neither the transcript nor Mr. Haddad's own files reflected that the issue had been brought to the trial court's attention. Mr. Haddad did not believe at the time he became aware of the potential conflict, that he had any privileged information about Mr. Schwartz, or any information that was not public record.

Mr. Haddad did not cross-examine Mr. Schwartz at Mr. Quinto's trial about the exact time frame of Mr. Schwartz's drug usage because Det. Losenbeck had already testified regarding the time frame, and had also testified that it was Mr. Schwartz who introduced Mr. Wells and Mr. Quinto to the officers. Significantly, in his testimony at the evidentiary hearing, Mr. Haddad stated:

> [t]hat Wells and the other person did stuff with Schwartz I did not feel like opening the door to anything so Mr. Tamen could come back. I did not think I had to. You would have had to have sat in the courtroom to see the jury's reaction to Mr. Schwartz when he was hedging and everything else. To cross examine him – Judge Ungaro cut Mr. Tamen off on my objection. I was not going back to give Mr. Tamen a chance to re-establish certain things with Mr. Schwartz. The cross examination, based on thousands I have done, was very abbreviated.
>
> Hr'g Tr. 25.[12]
>
> Mr. Tamen established what would have been established on cross examination. When Mr. Schwartz became argumentative and said he did not say what Mr. Tamen wanted him to say he proceeded to impeach him. I saw no purpose in having Judge Ungaro say you opened the door. I saw the jury's reaction. I somewhat know how to cross-examine and I made a calculated decision what to do. Schwartz was a witness for the conspiracy for which he [Mr. Quinto] was acquitted.

---

[12]  References to the testimony of Mr. Haddad as the evidentiary hearing held by the undersigned Magistrate Judge are based upon the draft Real Time transcript prepared by the court reporter; and, are designated by the abbreviation, "H'rg Tr.", followed by the page number.

Hr'g Tr. 26.

When I saw [Schwartz] testify on the witness stand I made a decision based on the way he came across, the way he looked.  He was not believed. Obviously he was not believed because they acquitted.  That was my decision based upon what I observed.

Hr'g Tr. 30.

In addition, in response to questions from the Court, Mr. Haddad testified that he had no knowledge about Mr. Schwartz that affected his cross-examination of Mr. Schwartz and that all of his knowledge about Mr. Schwartz was public record.  Rather, Mr. Haddad stated that his cross-examination of Mr. Schwartz was based upon the way that he came across on direct examination and that he would not have hesitated to cross-examine Mr. Schwartz in more depth had he believed it necessary to do so. *Id.*  Based upon this testimony, the undersigned finds that Mr. Haddad's cross-examination of Mr. Schwartz was not affected in any way by his representation of Mr. Schwartz.

Mr. Haddad was then questioned about the extent of his representation of Mr. Schwartz.  Mr. Haddad testified that he did not have any agreement with Mr. Schwartz to represent him while he was on probation and considered that his representation of Mr. Schwartz was concluded when Mr. Schwartz received probation.  The undersigned finds that there was no ongoing representation of Mr. Schwartz by Mr. Haddad between the date of his sentencing on February 11, 2005 until June of 2006.  However, as acknowledged by Mr. Haddad at the hearing, a motion for permission to travel, so that Mr. Schwartz and his wife could take a cruise was filed by his office in June of 2006.  Thus, in June of 2006, Mr. Haddad or someone from his office represented both Mr. Schwartz and Mr. Quinto.

Mr. Haddad also testified that he believed that he had raised an objection

14

challenging the admission of evidence related to Mr. Quinto's prior convictions, pursuant to Fed. R. Evid. 404(b).  The undersigned credits this testimony, which is supported by the transcript of the trial proceedings, which, as discussed in more detail below, reflect such an objection.

At the hearing, Mr. Quinto's counsel introduced the Notice of Appearance filed by Mr. Zimet on May 25, 2006 into evidence (Movant's Ex. 4). The Notice states, "I will be appearing for the purposes of cross examination and preparation of a potential conflict witness and a 'Chinese Wall' has been erected between counsel regarding this potential conflict." (DE # 4-cr).  In addition, the Movant introduced into evidence a letter from the prosecutor to Mr. Haddad, dated October 27, 2006, in which Mr. Schwartz is identified as a government witness (Movant's Ex. 3).

Based upon the above testimony and the exhibits introduced at the hearing, in addition to the underlying facts recounted in Mr. Haddad's testimony, the undersigned finds that: 1) Mr. Haddad believed that his representation of Michael Schwartz terminated prior to his representation of the Movant; and, he also believed that any conflict created by such representation had been waived by witness Schwartz, and therefore he was not in any way constrained from vigorously cross-examining witness Schwartz, at trial or from arguing his lack of credibility during closing argument; and,  2) Mr. Haddad's defense strategy and cross-examination of witness Michael Schwartz at Mr. Quinto's trial were not affected in any way by his representation of Michael Schwartz.

IV.    <u>LAW & ANALYSIS</u>

A. <u>There Was No Ineffective Assistance of Counsel</u>
<u>Based Upon the Alleged Conflict of Interest Claim</u>

The most significant issue presented by Mr. Quinto is his argument that he received ineffective assistance of counsel because his trial counsel, Fred Haddad,

previously represented one of the Government's witnesses, Michael Schwartz.  Mr. Quinto argues that Mr. Haddad labored under a conflict of interest at trial, and had failed to perform a vigorous cross-examination of Mr. Schwartz because of that conflict.  Mr. Quinto argues that this failure was significant because Mr. Schwartz provided damaging testimony against Mr. Quinto, including testimony which suggested that Mr. Quinto was willing to sell cocaine.  Further, Mr. Quinto asserts that even though Mr. Haddad was aware of the conflict created by Mr. Schwartz's willingness to testify at trial, as evidenced by the Notice Of Appearance as co-counsel of record filed by Mr. Bruce Zimet, Mr. Haddad failed to disclose that conflict to Mr. Quinto, and further proceeded to cross-examine Mr. Schwartz rather than having Mr. Zimet do so.  Finally, Mr. Quinto asserts that he is entitled to relief because the Court failed to conduct a *Garcia* hearing regarding Mr. Haddad's conflict of interest, even after Mr. Zimet filed a notice of appearance thereby alerting the Court to the fact that a conflict might exist.[13]

In response, the Government argues that the Movant cannot demonstrate that his counsel labored under an actual conflict of interest that adversely affected his representation because: 1) the witness, Michael Schwartz, admitted on direct examination that he had a drug problem and had a deal with the State to assist the police in its drug investigations; and, therefore there was no need to re-hash the issue on cross-examination, particularly when the witness testified on direct examination that the Movant had refused to sell him cocaine; 2) the defense strategy was completely successful on the Count related to Mr. Schwartz's testimony and since the Movant was

---

[13]  A *Garcia* hearing is conducted by a court pursuant to *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds* by *Flanagan v. United States*, 465 U.S. 259, 263 n.2, (1984) and is held to insure that a defendant is informed of conflicts of interest that may exist with his counsel and to ascertain whether the defendant elects to waive any such conflict.

acquitted on that Count; and, therefore the Movant is unable to demonstrate how a more aggressive cross-examination would have been helpful to the defense;  3) Mr. Haddad's representation of Mr. Schwartz concluded on February 11, 2005 prior to Mr. Haddad's representation of Quinto, and thus this is a case of successive representation, where it is more difficult to prove an actual conflict, rather than that of simultaneous representation; and, 4) the privilege to not be cross-examined by former counsel was actually the privilege of Mr. Schwartz, was waived by the witness.

### 1. *Framework for Analysis*

Generally, when a defendant asserts an ineffective assistance claim in a collateral proceeding, the defendant must establish that the representation by trial counsel fell below an objective standard of reasonableness, and that, but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different, *i.e.* the defendant must establish prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984).  However, the United States Supreme Court has held that the prejudice showing required in *Strickland* need not be made in connection with an ineffective assistance of counsel claim that alleges that defense counsel labored under a conflict of interest while representing the defendant. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).  Rather, in such a scenario, a petitioner must establish only that a conflict of interest adversely affected his counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335 (1980).  Once such a showing is made, the defendant need not demonstrate a reasonable probability that the result of the proceeding would have been different as required by *Strickland*; rather, prejudice is presumed. *Mickens*, 535 U.S. at 173.

Thus, the *Sullivan* standard applicable when a criminal defendant alleges that his counsel's performance was impaired by an actual conflict of interest differs substantially

from the *Strickland* standard generally applicable to Sixth Amendment ineffectiveness claims. In sum, whereas *Strickland* requires a showing that there is a reasonable probability that counsel's error changed the result of the proceeding; *Sullivan*, on the other hand, permits a defendant to recover upon a showing only that an actual conflict of interest adversely affected counsel's performance, without the need to demonstrate that, but for the conflict, there is a reasonable probability of acquittal. *United States v. Infante*, 404 F.3d 376, 391 n.11 (5th Cir. 2005).

Nevertheless, to demonstrate a conflict of interest and satisfy even the lesser standard in *Sullivan*, a merely speculative conflict is not sufficient. Rather, a defendant must show that his counsel actively represented conflicting interests. *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987). In addition, a defendant must show (1) a plausible alternative defense strategy that counsel might have pursued; (2) that the alternative strategy was reasonable; and (3) some link between the actual conflict and the decision to forego that strategy.[14] *Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999); *Accord, Pegg v. United States*, 253 F.3d 1274, 1278 (11th Cir. 2001). With this backdrop in mind, the Court turns to examining whether Mr. Quinto's attorney labored under an actual conflict that adversely affected his performance; and whether, therefore, his Sixth Amendment right to effective assistance of counsel was violated.

---

[14] The undersigned is aware that the Supreme Court's ruling in *Mickens v. Taylor* effectively determined that the Eleventh Circuit's two-prong approach to the actual conflict scenario is incorrect because it is not appropriate to view the "actual conflict" inquiry as separate and apart from the "adversely affecting" inquiry, but rather to view "an actual conflict" for Sixth Amendment purposes, as "a conflict of interest that adversely affects counsel's performance." See *e.g. Lombardo v. United States*, 222 F. Supp. 2d 1367 (S.D. Fla. 2002) *(*crafting new framework for analyzing conflict of interest claims in the wake of *Mickens)*. However, this distinction does not alter the instant analysis.

## 2. *Whether Mr. Haddad's Representation was Simultaneous or Successive*

As a preliminary matter, in order to resolve this issue, it is important to determine the temporal relationship of Mr. Haddad's representation of Mr. Quinto in relation to his representation of Mr. Schwartz. Generally, it is more difficult to prove that successive representation, as opposed to simultaneous representation, caused an actual conflict of interest. *Freund v. Butterworth*, 165 F.3d 839 (11th Cir. 1999). Indeed, in *Mickens v. Taylor*, the Supreme Court discussed the holding in *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and its progeny and commented, in dicta, that courts may have applied the *Sullivan* "no showing of prejudice necessary if actual conflict exists" standard too broadly, and questioned whether the *Sullivan* standard should be applied to all attorney conflict cases, or rather just those cases which involve defense counsel's active representation of conflicting interests, such as in a case of multiple concurrent representation. *Id.* at 174-75. Thus, the Court in *Mickens* explicitly left open the question of whether the *Sullivan* no-prejudice standard should be applied in cases of successive representation. *Id.* at 175-76. Such a pronouncement is not surprising given that both *Holloway v. Arkansas,* 435 U.S. 475 (1978) and *Sullivan v. Cuyler,* two cases closely examined by the Supreme Court in *Mickens*, involved situations where attorneys jointly represented two or more co-defendants simultaneously, and never addressed attorney conflict of interest issues in successive representation cases, or even, in cases with brief overlapping non-co-defendant representation. Specifically, in *Holloway*, the Supreme Court held that automatic reversal was required where a defense counsel's motion for appointment of separate counsel was denied after counsel objected that he could not adequately represent the conflicting interests of three co-defendants at a joint trial. *Holloway*, 435 U.S. 477. Akin to *Holloway*, in *Sullivan*, two attorneys represented three separately-tried

19

murder codefendants, where one attorney admitted at the hearing on one of the defendant's motion for collateral relief, that he did not want to present evidence in the first defendant's trial because he thought he would "be exposing [defense] witnesses for the other two trials that were coming up." *Sullivan*, 446 U.S. at 338-39.

The instant matter falls somewhere between the joint co-defendant representation scenarios presented in *Holloway* and *Sullivan* and the successive representation situation at issue in *Mickens*.  Specifically, it is undisputed that Fred Haddad represented Michael Schwartz as early as 2002, after Mr. Schwartz was arrested on drug trafficking charges.  According to Mr. Haddad, his representation of Mr. Schwartz concluded in February of 2005, after Mr. Schwartz was placed on probation for the state charges.  However, Mr. Haddad also testified that his law office filed a Motion to Travel for Mr. Schwartz sometime in June of 2006, although he did not believe that he, himself had handled that particular issue.  However, it is well settled in the Eleventh Circuit that work performed by one lawyer in a firm may be imputed to other lawyers in the firm.  *See e.g.*, *Reynolds v. Chapman,* 253 F.3d 1337, 1343-44 (11th Cir. 2001) (stating lawyer's confidential knowledge and loyalties can be imputed to his current partners and employees).  Thus, Mr. Haddad's representation of Mr. Schwartz either continued through at least the filing of the Motion to Travel in June of 2006 or was resurrected by the filing of that Motion at that time.  In addition, it is clear that Mr. Haddad began to represent Mr. Quinto in the underlying criminal matter following his arrest in May of 2006, represented him through Mr. Quinto's trial in November, and continued to represent him until approximately May 10, 2007 when Magistrate Judge O'Sullivan granted Mr. Haddad's second motion to withdraw as counsel.  Thus, although Mr. Haddad had ceased representing Mr. Schwartz by the time that Mr. Schwartz testified in Mr. Quinto's trial,

there was a period of time, albeit brief, that Mr. Haddad represented both Mr. Quinto and Mr. Schwartz.  In addition, the testimony of several witnesses at Mr. Quinto's trial reflect that Mr. Schwartz, in his confidential informant capacity, had introduced Mr. Quinto to the undercover officers in Mr. Quinto's criminal matter in January of 2005, which clearly occurred during the time when Mr. Haddad was representing Mr. Schwartz.  Moreover, a lawyer's duty to his client does not cease immediately upon the termination of active representation, but duties of confidentiality and loyalty remain unless waived, or otherwise terminated.  Therefore, under the facts of this case, the undersigned concludes that, unlike the attorneys in *Holloway* and *Sullivan*, Mr. Haddad did not simultaneously jointly represent co-defendants, although he did in fact engage in overlapping representation of Mr. Quinto and Mr. Schwartz.  As such, the Movant's conflict of interest claims are properly analyzed under a simultaneous representation framework rather than a successive one.  In such a case, the defendant must show that his attorney represented "inconsistent interests." *Smith v. White*, 815 F.2d 1401 (11th Cir. 1987).[15]

### 3.   *Whether Mr. Haddad's Simultaneous Representation of Mr. Schwartz and Mr. Quinto Created an Actual Conflict that Adversely Affected Counsel's Performance*

A criminal defendant is entitled to conflict-free representation. *Cuyler v. Sullivan*,

---

[15]  In a successive representation case, at minimum, a petitioner must demonstrate that either (1) counsel's earlier representation of the witness was substantially and particularly related to counsel's later representation of the petitioning defendant, or (2) counsel actually learned particular confidential information during the prior representation of the witness that was relevant to the petitioner-defendant's later case. *See Lombardo v. United States,* 222 F. Supp. 2d 1367 (S.D. Fla. 2002) *citing Lightbourne v. Dugger,* 829 F.2d 1012 (11th Cir. 1987).  In certain circumstances, however, even proof of both substantial relatedness and confidential information, may not necessarily be enough to demonstrate "inconsistent interests" in a successive representation case. *Id.* In that situation, a petitioner must submit other proof of inconsistent interests.  *Id.* Thus, in this case, given that it is a concurrent representation case, at very least, the defendant must satisfy the above standard.

446 U.S. 335, 346 (1980). The Eleventh Circuit has stated that an attorney who cross-examines a former client inherently encounters divided loyalties. *Porter v. Wainwright*, 805 F.2d 930, 939 (11th Cir. 1986).  In *Porter*, for example, a case in which an attorney represented two defendants for a brief overlapping time period, the court stated,

> In the instant case, [the Petitioner] claims that [his attorney] owed a continuing duty to [the witness/former client] which prevented vigorous cross-examination without violating the attorney/client privilege. [The Petitioner] asserts that [his attorney] was forced to choose between discrediting his former client through information learned in confidence, or foregoing vigorous cross-examination of the [witness] in an attempt to preserve attorney/client privilege. If true, these assertions would suffice to demonstrate an actual conflict of interest.

*Id.* at 940.  Thus, an actual conflict sufficient to sustain a claim of ineffective assistance of counsel may arise if an attorney who simultaneously represents two clients has to choose between competing confidences during that representation.  However, the case law makes clear that not every factual scenario where an attorney represents two clients with varying interests rises to that level.

In *Menendez v. United States*, 228 Fed. Appx. 897 (11th Cir. April 24, 2007), for example, the Eleventh Circuit cited to the conflict of interest standard enunciated in *Freund*, and affirmed a trial court's rejection of a § 2255 Motion to Vacate where a defendant claimed that he had received ineffective assistance of counsel when his attorney labored under a conflict of interest due to his simultaneous representation of both the defendant and his father at the time of a hearing on the defendant's motion to suppress.  In that case, a criminal complaint was initially filed against both the father and the defendant son and the same trial counsel was retained to represent both men.  After the son was indicted, counsel filed a motion to suppress evidence and statements obtained during the search of the son's home while the father was present.  At the

hearing on the motion to suppress, counsel did not call the father to testify on his son's behalf, even though the father's testimony would have likely been beneficial to the son's case and could have been used to rebut the testimony of the government's witnesses' version of facts related to the search.  The reviewing Court acknowledged that when an indictment was filed against the son and not the father, a possible conflict could have arisen if the attorney was forced to choose between a strategy that would help the son but would place the father in danger of being indicted.  *Id.* at 900.  However, the Eleventh Circuit found that the potential conflict never developed into an actual conflict and that, even if it had, the movant was unable to establish an adverse effect on his counsel's performance.  Specifically, the Court found that the father's willingness to testify at the hearing and the mere possibility that the government might prosecute him as a result, was too speculative to create an actual conflict.  The Court arrived at this conclusion even though the attorney admitted that it was a concern that the father "could still be in trouble." *Id.*  In addition, although the government conceded that calling the father to testify at the suppression hearing was a plausible and reasonable alternative strategy, the defendant was unable to establish that the alternative strategy was not followed because it conflicted with the attorney's external loyalties.  *Id.* at 900-01.  *Accord McCorkle v. United States*, 325 Fed. Appx. 804 (11th Cir. 2009).

Similarly, in the instant case, the Movant has failed to demonstrate that his counsel labored under an actual conflict that adversely affected his performance at trial. First, at the evidentiary hearing on the Motion to Vacate, the only testimony presented regarding whether the potential conflict ever developed into an actual conflict was provided by Mr. Haddad, who stated that he believed that at the time he cross-examined Mr. Schwartz, Mr. Schwartz had waived any conflict of interest and that his cross-

examination was not affected by his prior representation of Mr. Schwartz.  Thus, like the father in the *Menendez* case, Mr. Schwartz's waiver of any potential conflict caused by his former counsel cross-examining him, eliminated any conflict of interest that Mr. Haddad may have had with regard to Mr. Schwartz.  Hence, Mr. Haddad was not operating under "divided loyalties" when he represented Mr. Quinto at trial.  Rather, the uncontroverted evidence submitted to the Court on this point is that the prosecutor, informed Mr. Haddad that Mr. Schwartz had waived any conflict and "that he did not care if Mr. Haddad cross-examined him."  In this regard, it does not matter whether Mr. Schwartz in fact did waive any conflict, because the issue is whether at the time of the trial, Mr. Haddad believed that Mr. Schwartz had, thereby relieving Mr. Haddad of any burden of choosing between a strategy to protect the interests of Mr. Schwartz or those of Mr. Quinto.  Thus, Mr. Haddad did not operate under an actual conflict at trial.

In addition, the Movant has failed to demonstrate that Mr. Haddad possessed any confidential information about Mr. Schwartz that would have caused a conflict of interest with Mr. Haddad had he cross-examined Mr. Schwartz more fully.  On the contrary, the only testimony presented at the hearing was that Mr. Haddad did not gain any confidential information about Mr. Schwartz during his course of representation of him or any information that was not public record.  Further, Mr. Haddad testified that he did not participate in negotiating Mr. Schwartz's cooperation agreement in the State criminal matter and did not participate in the FBI's debriefing of him.[16]  Thus, the actual conflict of interest that the Movant points to is merely hypothetical in this case and thus is insufficient to sustain a claim of ineffective assistance of counsel.

It is for these reasons that this case is distinguishable from *United States v.*

---

[16]  As stated previously, the undersigned finds this testimony to be credible.

*Infante*, 404 F.3d 376 (5th Cir. 2005) and *Perillo v. Johnson*, 79 F.3d 441 (5th Cir. 1996),

two cases cited by the Movant.  In *Infante,* an attorney represented two witnesses

charged in the same conspiracy as the attorney's third client, both of whom testified

against that third client after they pled guilty.  The reviewing Court first determined that

the *Sullivan* standard applied because the attorney was involved in multiple

representation and was in a position of having to choose between divided loyalties

because the clients were all charged in the same conspiracy.  In addition, the testifying

clients would continue to be represented by the attorney when they sought a lesser

sentence based upon their cooperation with the government and their testimony against

the attorney's other client.  *Id.* at 392.  Similarly, in *Perillo,* an attorney represented two

defendants who were both involved in a robbery and murder wherein after one of the

clients was convicted, he testified against the other client at trial.  The circumstances in

the case at bar are far different from *Infante* and *Perillo* because Mr. Schwartz was not

charged in the same case as Mr. Quinto, Mr. Haddad did not represent Mr. Schwartz and

Mr. Quinto in the same criminal proceeding, and Mr. Haddad no longer represented Mr.

Schwartz with respect to any benefit that Mr. Schwartz might receive related to his

testimony against Mr. Quinto.

    Further, in *Porter v. Wainwright*, 805 F.2d 930, 941-42 (11th Cir. 1986), the Eleventh

Circuit remanded the case for the court to conduct an evidentiary hearing to determine if

an actual conflict of interest claim existed in a simultaneous representation context,

where the defendant alleged that his counsel had obtained confidential information about

a former client who testified against the defendant at trial, and thus had to choose

between maintaining the attorney-client privilege or vigorously cross-examining the

former client.  However, as previously noted, in this case Mr. Haddad testified that he had

not obtained any confidential information about Mr. Schwartz during his representation of him, and further, it was undisputed that Mr. Schwartz waived any attorney client privilege that may have limited Mr. Haddad's ability to vigorously cross examine him. Also, it is worth noting that even in *Porter*, the Eleventh Circuit did not automatically reverse the conviction, but rather remanded the case for the trial court to hold an evidentiary hearing to determine if, under the facts of the case, the petitioner had demonstrated that there was an actual conflict that adversely affected his counsel's performance. *Id.* at 940.

Moreover, in the case at bar, the Defendant has failed to demonstrate that his counsel's performance was adversely affected by the alleged conflict. As stated above, to satisfy this standard, a defendant must show (1) a plausible alternative defense strategy that counsel might have pursued; (2) that the alternative strategy was reasonable; and (3) some link between the actual conflict and the decision to forego that strategy. *Pegg v. United States*, 253 F.3d 1274, 1278 (11th Cir. 2001). On the contrary, it is manifest from the trial record and Mr. Haddad's testimony at the evidentiary hearing that Mr. Haddad did not have a reasonable alternative defense strategy which he chose to forego for some reason related to an actual conflict. First, as discussed above, there was no actual conflict because Mr. Haddad did not labor under divided loyalties. Second, and most significant for this portion of the analysis, Mr. Haddad chose not to expand his cross-examination of Mr. Schwartz due to Mr. Schwartz's devastatingly poor performance on the direct examination by the prosecutor, not because of his concerns regarding cross-examining Mr. Schwartz. In fact, Defendant Quinto does not dispute that the prosecutor himself attempted to impeach Mr. Schwartz's testimony on direct examination, or that Mr. Schwartz appeared to be wholly incredible to the jury. Thus, despite the Defendant's argument to the contrary, it would not have been reasonable for

Mr. Haddad to either open the door for additional questioning by the prosecutor based upon his cross-examination, after Mr. Schwartz had not been beneficial to the Government's case; nor, would it have been prudent to question Mr. Schwartz in an aggressive manner and risk having him becoming irritated and testifying in a manner more adverse to Mr. Quinto.  In fact, at the § 2255 hearing, Mr. Haddad testified that he believed that Mr. Schwartz was trying to "help Mr. Quinto out" through his testimony. The transcript of Mr. Schwartz's trial testimony corroborates this observation.  Thus, the record is devoid of any evidence that Mr. Haddad failed to pursue a reasonable alternative strategy based upon his prior representation of Mr. Schwartz.  As such, the Defendant has failed to show that his counsel's performance was adversely affected by an actual conflict, and therefore Mr. Quinto is not entitled to relief on this basis.

### 4.  *Whether Mr. Quinto Waived Any Conflict*

Finally, as stated previously, the Movant maintains that the Court's failure to hold a hearing to inquire about the alleged conflict and to ascertain whether Mr. Quinto waived that conflict mandates that Mr. Quinto be granted § 2255 relief.  Because the undersigned has determined that Mr. Haddad's representation of Mr. Schwartz did not rise to an actual conflict that adversely affected his performance, the undersigned need not reach this issue.  However, even if there had been such a conflict, for the following reasons, it was not error for the Court to fail to hold a *Garcia* hearing.

A defendant "may waive [a] conflict of interest and elect to have [an] attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary." *United States v. Garcia,* 447 F.3d 1327, 1337 (11th Cir. 2006), *citing United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994); *see McConico v. Alabama*, 919 F.2d 1543, 1548 (11th Cir. 1990). "In order for a waiver of the right to conflict-free counsel to be knowing and

intelligent, the State must show that the defendant (1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel." *Zuck v. Alabama*, 588 F.2d 436, 440 (5th Cir. 1979).

In this case, the Government does not contend that the Movant waived any potential or actual attorney conflict either on the record or in open court related to his attorney's representation of Michael Schwartz.  Nor is it contested that the Court did not conduct a *Garcia* hearing to determine whether Mr. Quinto was aware of the potential conflict or chose to waive that conflict.  Rather, the trial record is silent as to Mr. Quinto's knowledge and/or waiver of his counsel's potential conflict.

During the evidentiary hearing on the instant Motion, Mr. Haddad confirmed that after he learned about Mr. Schwartz's potential involvement as a government witness in this case, he spoke to Mr. Quinto about the issue, and Mr. Haddad decided that Mr. Zimet would enter a notice of appearance of co-counsel for purposes of cross examination of Mr. Schwartz because of the potential conflict.  In addition, Mr. Haddad testified that although his recollection was that he had verbally alerted the Court to the potential conflict with Mr. Schwartz and had also requested a *Garcia* hearing, he could find no indication in the record or in his file that the Court had been alerted to the potential conflict, other than through the filing of Mr. Zimet's notice of appearance.  Further, Mr. Haddad confirmed at the hearing that Mr. Zimet's notice of appearance did not specifically identify the name of the witness who Mr. Haddad believed created a potential conflict.  Rather, Mr. Zimet's notice of appearance merely stated, "I will be appearing for the purposes of cross examination and preparation of a potential conflict witness and a 'Chinese Wall' has been erected between counsel regarding this potential conflict." (DE #

34).

Movant seizes on these facts to advance his argument that trial counsel's failure to request a *Garcia* hearing and the Court's failure to inquire about the conflict at a hearing mandate a reversal of his conviction. Specifically, in his 2255 Motion and Reply, Mr. Quinto argues that the trial Court knew or reasonably should have known from the filing of Bruce Zimet's May 31, 2006 notice of appearance that Mr. Haddad had a conflict of interest, and as such, the Court had a duty to hold a *Garcia* hearing, and further that the Court's failure to do so violated Mr. Quinto's constitutional rights to counsel and due process (DE # 1 at 7, DE # 2 at 8-9, DE # 17 at 2). Counsel for Mr. Quinto again argued this point at the hearing on the Motion, although Counsel acknowledged that neither Mr. Haddad nor Counsel for the Government told the Court about the conflict and neither requested a *Garcia* hearing.

In support of his position, Mr. Quinto points to the holdings in *Mickens v. Taylor*, 535 U.S. 162 (2001), *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), and *Cuyler v. Sullivan*, 446 U.S. 336, 347 (1980). However, in *Cuyler v. Sullivan*, the Supreme Court unequivocally held that unless a trial court knows or has a reasonable reason to know that a conflict may exist, the court is not required to inquire into the propriety of multiple representation. *Cuyler*, 446 U.S. at 347.

Moreover, even if a trial court knows or should have known that counsel for a defendant has a potential conflict of interest, in *Mickens*, the Supreme Court put to rest any argument that pursuant to *Sullivan*, a trial court's failure to inquire about a conflict, even when the trial court knows or reasonably should have known about the existence of a conflict, will result in an automatic reversal of a conviction. Rather, the *Mickens* Court made clear that a petitioner still must demonstrate that an actual conflict adversely

29

affected his counsel's performance before any relief will be granted. *Accord Lombardo v. United States*, 222 F. Supp. 2d 1367, 1382 (S.D. Fla. 2002) ("even if a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, a petitioner alleging, on collateral review, a Sixth-Amendment ineffective assistance of counsel violation premised on such conflict must nevertheless demonstrate that the conflict was an actual conflict that adversely affected his counsel's representation. . . [a] district court's failure to inquire under such circumstances does not therefore entitle the petition to automatic relief.") Thus, the cases cited by the Defendant do not support his claim because they do not stand for the proposition that a court's failure to hold a *Garcia* hearing mandates relief under 2255 without the court first ascertaining whether the counsel labored under an actual conflict that affected its performance.

In addition, in this case, it is even unclear whether the trial court knew or should have known that there was a potential conflict in large part, if not entirely, because of the way in which the issue was presented, or not presented to the trial court. Mr. Zimet filed a Notice of Appearance that did not specifically identify the witness with whom the potential conflict might occur.[17] *See* (DE # 34-cr). Also, there is no evidence in the record that Mr. Haddad ever brought the conflict directly to the Court's attention. Thus, on this record the Court did not know and should not have reasonably known, of the potential conflict. Moreover, as previously stated, whether the Court knew of the potential conflict or not, under *Mickens*, even if a hearing was not held by the Court, the Movant would still

---

[17] The undersigned notes that until the hearing in the case at bar it was not clear that the witness was Mr. Schwartz. Moreover, for the majority of the pretrial proceedings the prosecutor had advised Mr. Haddad that Mr. Schwartz would *not* be a witness against Mr. Quinto.

have to show that an actual conflict existed that adversely affected the attorney's performance before relief could be granted.

Accordingly, in this case, even assuming *arguendo* that the trial court knew or should have known that Mr. Haddad had a potential conflict based upon the Notice of Appearance filed on behalf of Mr. Zimet, the trial court's failure to inquire into the possible conflict does not afford the Movant herein automatic relief under § 2255.

### B.  There was no Ineffective Assistance of Counsel Based on the Trial Court's Admission of 404(b) Evidence

The Defendant also claims that he received ineffective assistance of counsel when his attorney failed to properly object to the admission at trial of Mr. Quinto's prior convictions and failed to preserve the same issue for appeal.  Specifically, Mr. Quinto alleges that Mr. Haddad's failure to file any pre-trial motions to exclude the introduction of Mr. Quinto's prior conviction for distributing one kilogram of cocaine while he was in the Air Force, and Mr. Haddad's failure to specify the basis for his objection to the admission of this prior conviction at trial, resulted in the conviction being wrongfully admitted into evidence at trial, and further resulted in the issue not being preserved for appeal.  Mr. Quinto asserts that these omissions denied him his constitutional right to effective assistance of counsel.

As stated previously, to establish a claim for relief based upon ineffective assistance of counsel, a  movant must meet the two pronged test set forth in  *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland,* a defendant must show: (1) that his counsel's representation was deficient; and (2) that this deficient representation prejudiced Petitioner.  466 U.S. at 687; *Baxter v. Thomas*, 45 F.3d 1501, 1512 (11th Cir. 1995).

1. *Movant is Unable to Demonstrate Counsel's Deficient Performance*

To establish deficient performance, a petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" and "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994), *citing Strickland*, 466 U.S. at 690.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. at 686 (1984).  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992).  In addition, "a court should be highly deferential to those choices by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

In this case, the Movant first contends that his counsel's performance was deficient because he failed to file any pretrial motions to exclude reference to his previous conviction in the Air Force.  However, as admitted by the Movant, during the course of trial, Mr. Haddad did raise objections to the admission of Mr. Quinto's prior conviction.  First, on November 7, 2006, after the jury was selected, Mr. Haddad alerted the Court to his desire to preserve the record on the admission of the 404(b) evidence, because he anticipated that Mr. Wells was going to testify about Mr. Quinto's drug

conviction while he was in the Air Force (Trial Tr. 108).  Mr. Haddad stated that the Government's argument for admission of the prior conviction was that the prior conviction was "inextricably intertwined" with the conspiracy charged at trial.  In response to Mr. Haddad's statement, the Court and the Government both noted that he had just preserved the record on that issue.  Second, on November 8, 2006, although Mr. Haddad did not object when Mr. Wells testified about Mr. Quinto's prior conviction, Mr. Haddad did object when the Government moved to introduce the record of the conviction into evidence during the direct examination of Mr. Wells. (Trial Tr. 97).  The Court overruled this objection.  In addition, this issue was raised again in the Movant's post-trial Motion for New Trial (DE # 129-cr) and Memorandum of Law (DE #135-cr).  Further, at the evidentiary hearing on the instant Motion, Mr. Haddad testified that he believed that he had raised an objection to the erroneous admission of the evidence related to Mr. Quinto's prior convictions. Thus, this is not a case where counsel for the Defendant failed to recognize and thus raise a legal issue at trial.  Rather, the trial transcript reflects that Mr. Haddad did, in fact, object to the admission of Mr. Quinto's prior conviction and the fact that Mr. Quinto now believes that it was not adequately raised, does not render Mr. Haddad's performance on this issue deficient.

Moreover, as properly pointed out by the Government, evidence of prior drug convictions generally are admissible in facts akin to the case at bar. Indeed, Federal Rule of Evidence 404(b) provides in relevant part,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

The Eleventh Circuit has stated that the proper test for admissibility of 404(b) evidence is:

1)  the evidence must be relevant to an issue other than the defendant's character; 2) the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; 3) the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.  *United States v. Sawyer*, 2010 WL 144034 at *2 (11th Cir. 2010), *citing United States v. Matthews,* 431 F.3d 1296, 1310-11 (11th Cir. 2005).

Applying this test, the Eleventh Circuit recently upheld the admission of prior drug convictions of a defendant charged with conspiracy to possess with intent to distribute cocaine, even though the prior convictions had occurred more than ten years prior to the charges at issue and, were not convictions for conspiracy to possess with intent to distribute.  *United States v. Sawyer*, 2010 WL 144034 *2 (11th Cir.  2010).  In so doing, the Court stated "in every conspiracy case, a not guilty plea renders the defendant's intent a material issue.  Evidence of such extrinsic evidence as may be probative of a defendant's state of mind is admissible unless the defendant affirmatively takes the issue of intent out of the case."  *Id., citing Matthews,* at 1311.  In addition, the Court cited to earlier published opinions which upheld the admission of drug-related convictions in cases where defendants were charged with conspiracy to possess with intent to distribute narcotics.  *Id*., *citing United States v. Butler*, 102 F.3d 1191, 1196 (11th Cir. 1997) (upholding admission of a prior conviction for possession of cocaine for purposes of demonstrating defendant's intent in the charged conspiracy for possession with intent to distribute); *United States v. Cardenas*, 895 F.2d 1338, 1341-45 (11th Cir. 1990) (upholding admission of testimony regarding defendant's prior use of and trafficking in cocaine, where defendant was charged with conspiracy to possess with intent to distribute cocaine).

Further, in *Sawyer*, the Court found that the probative value of admitting the defendant's prior convictions was not substantially outweighed by its undue prejudice, and stated, "[C]ircuit precedent regards virtually any prior drug offense as probative of the intent to engage in a drug conspiracy . . . ." *Id.*, *citing Matthews,* 431 F.3d at 1311.

Finally, in this matter, the evidence related to Mr. Quinto's prior conviction was not wholly unrelated to the facts of this case. Rather, Mr. Wells' testimony on this issue provided the factual background for his and Mr. Quinto's early involvement in selling drugs and further explained the relationship between Mr. Quinto and Mr. Wells. Thus, Mr. Wells' testimony on Mr. Quinto's conviction was probative and properly admitted. Therefore, to the extent that Mr. Haddad failed to make a more detailed objection to this evidence, Defendant has failed to establish that Mr. Haddad's performance on this issue fell below an objective standard of reasonableness due to this omission.

### 2. *Movant is Unable to Show Prejudice as a Result of Counsel's Alleged Deficient Performance*

Even assuming, *arguendo,* that Mr. Quinto demonstrated that his counsel's performance on this issue was deficient, Defendant's argument nevertheless fails because he is unable to meet the prejudice prong under *Strickland*. Under *Strickland*, a Movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. When courts are considering defective performance at the guilt stage, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Purvis v. Crosby,* 451 F.3d 734 (11th Cir. 2006) *citing Strickland*, 466 U.S. 695.

At the outset, the undersigned notes that the Eleventh Circuit has drawn a

distinction between: (1) a claim that, while efficacious in raising an issue, i.e., objecting to the alleged error, counsel nonetheless was ineffective for failing to preserve the issue for appeal; and (2) a claim that trial counsel was ineffective for failing to object to an alleged error at trial. *See Davis v. Sec'y for Dept. of Corr.*, 341 F.3d 1310, 1316 (11th Cir. 2003). In making that distinction, the Eleventh Circuit has stated that, in the former case, with respect to *Strickland's* prejudice prong, courts ask "whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Id*. In contrast, in the latter case, with respect to *Strickland's* prejudice prong, courts ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Purvis v. Crosby*, 451 F.3d 734, 741 (11th Cir. 2006).

In this case, Mr. Quinto alleges that counsel was both ineffective by failing to present the legal argument against admitting his prior conviction, which resulted in the wrongful admission of the conviction; and also, that his counsel failed to preserve the issue for appeal. Thus, both types of claims identified by the Eleventh Circuit are raised in the instant matter. However, under the facts of this case, under either test, the Movant is unable to satisfy the prejudice prong of the *Strickland* test.

As stated above, at trial, Mr. Quinto was acquitted of the conspiracy charges, but was convicted of Count Five, which charged him with of distribution of cocaine. This offense involved the sale of cocaine on April 21, 2005 to an undercover officer. Thus, in order for Mr. Quinto to prevail on his claim that his counsel failed to properly object at trial on this issue, he must demonstrate that had it not been for the admission of the reference to Mr. Quinto's 1991 conviction for cocaine distribution, he would not have been convicted of distributing cocaine. Based upon the record before the Court, it is

clear that Mr. Quinto is unable to meet this requirement.  Specifically, the evidence

regarding the April 21, 2005 sale of cocaine to an undercover officer was overwhelming

and largely uncontested.  Detective Daly, the undercover officer to whom Mr. Quinto sold

the cocaine, testified that after a series of recorded telephone calls with Mr. Quinto, he

met with Mr. Quinto on that date, and purchased 10.6 grams of cocaine from him.  The

transaction was recorded on video tape and audio tape (Trial Transcript Nov. 8, 2006, at

56-58, 62).

Similarly, the Movant is unable to show that if this issue had been preserved for

appeal, there was a reasonable likelihood of a more favorable outcome of the appeal.  At

the outset, the undersigned notes that the issue was preserved for appeal as noted by the

Court and prosecution at the commencement of the trial and during the trial.  Moreover,

for the same reasons that the undersigned concluded that counsel's performance was

not deficient, namely that Mr. Quinto's prior conviction was properly admitted as 404(b)

evidence, Mr. Quinto is unable to demonstrate that had the issue been preserved for

appeal, that the Eleventh Circuit would have reversed the conviction or remanded the

case based upon the admission of that evidence.[18]  Thus, the Movant is unable to show

that, but for his counsel's deficient performance, the outcome of the trial would have

been different, or the outcome of his appeal would have been more favorable.  Therefore,

the Movant has failed to satisfy the *Strickland* prejudice standard.  As such, Mr. Quinto's

claim for relief on this ground must be denied.

---

[18]  The Movant has not alleged that this matter was raised on appeal and rejected by
the Appellate Court based upon the failure of trial counsel to preserve the issue for
appeal.  However, because one of the issues raised in the instant 2255 Motion is that Mr.
Quinto should not have been allowed to proceed pro se on appeal, the undersigned
addresses the substance of the Movant's argument, rather than finding that this claim is
procedurally barred because he failed to raise it in his direct appeal.

### C.    Trial Counsel's Motion to Withdraw was Properly Granted

#### 1.  *Introduction*

Mr. Quinto also asserts that he is entitled to relief because the Magistrate Judge did not have the authority to grant his trial counsel's request to withdraw from representing him on appeal, and to allow Mr. Quinto to proceed on appeal *pro se.*  The Movant argues that pursuant to 28 USC § 636, a United States Magistrate Judge is not authorized to enter a final order that permits a defendant to proceed pro se on direct appeal; and, he further contends that the Magistrate Judge exceeded the scope of the Order of Referral from the District Judge which only directed him to determine whether counsel could withdraw from representation, and not to determine whether Mr. Quinto could proceed pro se on appeal.

#### 2.  *Authority of Magistrate Judges*

Title 28 U.S.C § 636 (b)(1), which sets forth the powers of United States Magistrate Judges, provides, in relevant part,

(b)(1) Notwithstanding any provision of law to the contrary--

> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

> (B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications

> for posttrial...relief made by individuals convicted of criminal
> offenses and of prisoner petitions challenging conditions of
> confinement.

In addition, § 636 (b)(3), provides,

> (3) A magistrate judge may be assigned such additional
> duties as are not inconsistent with the Constitution and laws
> of the United States.

Thus, under the plain language of the statute, it was within the Magistrate Judge's authority to consider and rule on the Motion at issue. The argument raised by the Movant herein was effectively foreclosed by the recent decision of the Eleventh Circuit Court of Appeals in *United States v. Schultz*, 565 F.3d 1353, 1359-60 (11th Cir. 2009). There, the Court expressly held that a district court did not err in allowing a magistrate judge to decide a motion for self-representation, and flatly rejected a defendant's argument that the magistrate judge did not have the authority to rule on such a motion. In arriving at its determination, the Court referenced 28 U.S.C § 636 (b)(1)(A) and concluded, "magistrate judges are authorized to 'hear and determine any pretrial matter,' and none of the specific exceptions to this rule include a pretrial motion for self-representation or anything analogous to that type of motion." *Id.* Similarly, in *United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003), the Eleventh Circuit affirmed a magistrate judge's decision, after holding a *Garcia* hearing, that the defendant knowingly and voluntarily waived any conflict in her representation.

Further, other circuits have also held that magistrate judges have the authority to decide motions for self-representation and substitution of counsel. *Schultz*, 565 F.3d, at 1358, *citing United States v. Modena*, 302 F.3d 626, 630 (6th Cir. 2002) ("[a] magistrate judge is authorized by statute to determine whether a criminal defendant has effectively waived the right to counsel"); *United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir. 1996)

("Title 28 U.S.C. § 636(b)(1)(A) permits district judges to designate non-Article III magistrate judges for the determination of nondispositive pretrial motions, such as motions for substitute counsel.").

Finally, the cases cited by the Defendant in support of his argument that the Magistrate Judge exceeded his authority do not address the appointment of counsel, rather they deal with either jury selection or sentencing, both of which, unlike the appointment of counsel, have been deemed critical stages in a criminal proceeding. *See United States v. Ruiz-Rodriguez*, 277 F.3d 1281, 1291 (11th Cir. 2002) ("similar to jury matters during the felony trials . . . the initial sentencing of a defendant in felony case is undoubtedly a critical stage in a criminal proceeding.")

Movant seeks to avoid this conclusion by arguing that the District Judge's Order of Referral limited the Magistrate Judge's jurisdiction to only resolve the Movant's Motion to Withdraw Counsel of Record. However, the Movant's argument is without merit. The District Judge referred to the Magistrate Judge both Counsel's Unopposed Motion to Withdraw as Counsel (DE # 194-cr) and his Renewed Motion to Withdraw And Motion for Ruling on Previously Filed Motion to Review Magistrate Decision (DE # 231-cr) through the entry of two Orders of Reference (DE ## 198, 242-cr). In the first Motion to Withdraw, counsel requested that a hearing be held to determine whether the Defendant had the capability to proceed pro se on appeal. As such, the referral of that Motion to the Magistrate Judge included that request for relief. In addition, in those Orders of Reference, the District Judge ordered that the Parties were to provide all motions and submissions related to the referred motion and all materials necessary to the resolution of the referred matter to the Magistrate Judge. Thus, it is clear that the District Judge contemplated that the Magistrate Judge would resolve all of the issues related to the

referred Motions.  Moreover, the undersigned notes that the Defendant failed to either appeal, or object to this ruling made by the Magistrate Judge.

### 3. *The Defendant Knowingly and Voluntarily Waived his Right to Appellate Counsel*

#### a. *Applicable Law*

Finally, Mr. Quinto argues that, as evidenced by his incoherent and rambling filings, he was not capable of intelligently and competently waiving his constitutional right to assistance of appellate counsel.  A criminal defendant has a constitutional right to represent himself "when he knowingly, voluntarily, and intelligently elects to do so." *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986).  For a waiver of the Sixth Amendment right to be valid, the defendant "must clearly and unequivocally assert [his] right of self-representation." *Id.*  However, before a court grants a defendant's request for self-representation, the court must make the defendant aware of the dangers and disadvantages of self-representation. *Id.*, citing *Faretta v. California*, 422 U.S. 806, 835 (1975) (internal quotation marks omitted). To determine whether a defendant's waiver is knowing and intelligent, courts look to "the particular facts and circumstances of [his] case, including [his] background, experience, and conduct." *Fitzpatrick*, 800 F.2d at 1065.

In *Fitzpatrick*, the Eleventh Circuit identified various factors to aid in determining whether a defendant has validly waived his Sixth Amendment right to counsel. *Id.* at 1065-67.  These factors include the defendant's (1) age, education, and mental/physical health; (2) prior contact with an attorney in preparation for the proceeding at issue; (3) knowledge of the nature of the charges and possible defenses and penalties; (4) knowledge of the rules of procedure, evidence, and courtroom decorum; (5) previous experience with criminal trials; and (6) access to appointed, stand-by counsel; (7) whether the exchange between the defendant and the court consisted merely of pro

41

forma answers to pro forma questions; (8) whether the waiver was a result of coercion or mistreatment of the defendant; and (9) whether the defendant was attempting to delay or manipulate the proceedings. *Id.* at 1067 (quotations omitted).

However, "[i]f, when viewing all relevant circumstances, a court concludes a defendant's equivocal, irrational, or otherwise uncooperative conduct stems from serious mental illness, confusion, or any other condition indicative of a lack of understanding, the court should prohibit the defendant from proceeding pro se, even if the defendant has rejected counsel or made an affirmative request to proceed without counsel." *Id.*, *citing United States v. Garey*, 540 F.3d 1253, 1267 n.9 (11th Cir. 2008) (*en banc*). In addition, a defendant who was in fact incompetent may be entitled to relief, although the burden of proving incompetent-in-fact would be on the petitioner. *Id., citing, e.g.*, *Jones v. Walker*, 540 F.3d 1277, 1292 (11th Cir. 2008) *(en banc)*. Based upon a thorough review of the record, the undersigned concludes that the Magistrate Judge's determination on this issue was correct and, thus, the Defendant's Motion must be denied on this ground.

### b. *Analysis*

Preliminarily, it is significant to note that this is not a case where a defendant seeks to proceed in forma pauperis and is thus unable to obtain or afford counsel, appellate or otherwise, to represent him. Rather, Mr. Quinto never claimed indigency, sought to proceed in forma pauperis, or requested that counsel be appointed to represent him on appeal. Thus, there was nothing in either the proceedings or in the Orders issued by the Magistrate Judge that would have prevented the Defendant from retaining counsel to represent him on appeal, if he so desired.

On May 10, 2007, to ensure that the Defendant was competent to proceed pro se, and to ensure that Mr. Quinto was appraised of the perils of proceeding pro se on appeal,

the Magistrate Judge held a second hearing on Trial Counsel's Motion to Withdraw.  At that hearing, Mr. Quinto stated: "First and foremost, I would like to state that I am presenting myself to this court.  I am not representing myself.  I am presenting myself.  I am a flesh and blood soul.  I am not a fiction . . . I stand on my affidavits and other documents as being true and accurate. I am not here to give legal advice to you." (DE # 300-cr at 5). Mr. Quinto also stated that he would be presenting himself along with counsel, not an agent of the court or of this bar monopoly.  *Id.*  He further stated he would have competent legal counsel, not a member of your bar association. *Id.* at 7.  The Magistrate Judge then stated, "by our rules, you are prohibited from being represented by someone who is not a member of a bar." *Id.*

Mr. Quinto responded: "Then I will represent myself, I will represent this fiction that my attorney Fred Haddad failed to ever tell me what was actually being charged." *Id.* Mr. Quinto then asked the Magistrate Judge if his brother-in-law, a non-lawyer, could represent him on appeal, and the Magistrate Judge informed him that representation by a non-lawyer was not permitted. *Id.* at 10-11.  After several exchanges between the Magistrate Judge and Mr. Quinto, the Magistrate Judge stated "unless you can tell me that you are going to represent yourself, then I am not going to allow you to proceed." *Id.* Quinto then stated, "Okay.  I am going to satisfy this court, and I am going to satisfy you, your honor, and I am going to represent myself." *Id.* at 12.

The Magistrate Judge repeatedly advised Mr. Quinto that most appeals are not successful and that he would likely not be successful on appeal without legal counsel. *Id.* at 15.  Mr. Quinto ultimately responded, "I appreciate your advice your honor, but I do not wish to have any member of this Bar Association associated with this case." *Id.* at 17.

The Magistrate Judge then questioned Mr. Quinto about the rules of appellate procedure and Mr. Quinto stated that he was becoming more and more informed every day. *Id.* at 18.  When questioned by the prosecutor, Mr. Quinto further claimed that he had not used the jail's law library, but he had been reading a lot of case law, that he had the rules of civil and criminal procedure, and that he had already been involved in extensive study for the past three months.  *Id*. at 22.  When Mr. Quinto asked if he knew what a brief was, he stated that he did not, but he further replied that he had embarked upon study, and knew that he was going to do a more competent job than his former attorney, Fred Haddad.  *Id*. at 25.  Finally, when Mr. Quinto was asked if it was his intention to learn how to research case law so that he could find cases and precedent to support his arguments on appeal, Mr. Quinto answered in the affirmative.  *Id.*  The Magistrate Judge then ruled that Mr. Quinto had voluntarily and knowingly waived his right to be represented by counsel in the matter and issued an order permitting him to proceed pro se. *Id*.

Thus, given the extensive inquiry by the Magistrate Judge in this matter, when the *Fitzpatrick* factors are applied to the facts of this case, it is clear that the Movant unequivocally stated his desire to represent himself and that the Movant's waiver of appellate counsel and decision to proceed pro se were knowing and voluntary. Specifically, the Presentence Investigation Report in this matter reflects that Mr. Quinto graduated from high school, is fluent in six languages and received fifty-eight college credits in avionic courses.  In addition, Mr. Wells testified that between the years of 2003-2005, Mr. Quinto had traveled to Europe several times to look for real estate and business ventures, and stated that "Jesse speaks five languages fluently." (Trial. Tr. at 135-136). As set forth above, at the May 10, 2007 hearing, Mr. Quinto had provided coherent

information about his personal background when questioned by the Court, and stated that he had sixty college credits and had never been treated for a mental illness. In addition, Mr. Quinto had prior contact with an attorney throughout his trial and for some portion of the time after the trial and before filing his appeal. There was no evidence that Mr. Quinto did not have an understanding or knowledge of the nature of the charges against him, and he clearly had previous experience with criminal proceedings. Further, although Mr. Quinto was not versed in the Rules of Appellate Procedure, he indicated at the May 10, 2007 hearing that he had been reading case law, and had been involved in extensive study over the previous three months. Tellingly, after being permitted to proceed pro se on appeal, Mr. Quinto timely filed an appellate brief and properly navigated through the procedural requirements necessary to have his appeal considered by the Eleventh Circuit Court of Appeals. In fact, in that Court's twelve-page Order affirming the Defendant's conviction, the Court made no reference to Mr. Quinto's appellate brief as being incoherent or otherwise reflecting that the Court had doubts about Mr. Quinto's capability to proceed pro se on appeal (DE # 295-cr).

The undersigned recognizes that Mr. Quinto's discussions with the Magistrate Judge at the hearing on trial counsel's motion to withdraw were not a model of clarity. However, the record also reflects that Mr. Quinto was not coerced into representing himself. As stated, in *United States v. Garey*, 540 F.3d 1253, 1265 (11th Cir. 2008):

> [W]e recognize it is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers. Without diminishing in any way our concern that district courts protect defendants from unwittingly waiving fundamental Constitutional rights, we conclude our prior precedents fail to recognize a defendant may intentionally and voluntarily waive his right to

> counsel and accept the consequent necessity of self-representation in more than one way.

In addition, the *Garey* Court held that when a defendant engages in behavior that creates tension between his right to counsel and that his right to self-representation, a court may ask him to make a choice, and he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and consequences of his choice. *Id.* at 1266.

In this matter, the transcript of the hearing before the Magistrate Judge reflects that Mr. Quinto was not cooperative and his behavior undoubtedly raised tension between his right to counsel and his right to self-representation.  Under those circumstances, the Magistrate Judge properly repeatedly inquired whether Mr. Quinto wanted to represent himself, asked him to make a choice regarding self-representation, and then informed him of the consequences of his decision when he waived his right to counsel affirmatively through his statement that he would represent himself, and tacitly through his uncooperative behavior.  Further, to the extent that Mr. Quinto's present counsel hints that Mr. Quinto was not competent to make such a decision, the record does not support this conclusion; and, the Movant has failed to meet its burden under a claim of that nature.  Moreover, as stated above, there was nothing in the Court's order that prevented Mr. Quinto from retaining private counsel to represent him on appeal, as he did in his criminal trial.

In addition, the Movant's reliance on *Penson v. Ohio*, 488 U.S. 75 (1988) is unavailing.  The defendant in that matter, unlike Mr. Quinto, requested that the court appoint him a new attorney, and the court denied his request.  In the instant case, Mr. Quinto repeatedly indicated that he did not want a member of any bar to represent him in his appeal.  In this regard, the undersigned disagrees with Movant's Counsel's

characterization of Mr. Quinto's insistence that he was not asking to represent himself but rather "present" himself, as reflecting Mr. Quinto's ability to knowingly and voluntarily waive his right to counsel.  Rather, a thorough review of May 10, 2007 hearing transcript yields the conclusion that Mr. Quinto took issue with the concept of him being "represented" in court, as he is not a "representation" of himself, but rather that he would "present" himself to the court (DE # 300-cr at 12).  Ultimately, Mr. Quinto responded that he desired to represent himself. *Id*.  In addition, when the Magistrate Judge informed Mr. Quinto that he had a right to represent himself in his case, Mr. Quinto clearly stated that he was exercising that right.  Mr. Quinto also indicated that he comprehended the information that the Magistrate Judge provided him regarding the proceedings, although he did not agree with it.

Finally, although Mr. Quinto's present counsel suggests that nothing changed between the time that the Defendant first appeared before the Magistrate Judge in March and his second appearance in May, during the May hearing, Mr. Quinto stated that he was becoming familiar with the rules of appellate procedure, and that over the past few months had been reading case law, had the rules for both criminal and civil procedure, and had access to Black's Law Dictionary and Baron's Law Dictionary, and stated that it was his intention to learn how to research case law to support his arguments.  In addition, trial counsel sought reconsideration of the earlier denial, and asserted that an irreconcilable conflict had arisen.  Thus, the Magistrate Judge acted well within his authority to reconsider the earlier decision.

Simply put, based upon a review of the extensive exchange between the Magistrate Judge and Mr. Quinto, the undersigned concludes that the Magistrate Judge correctly concluded that Mr. Quinto was capable of proceeding pro se on appeal.

Accordingly, Mr. Quinto is not entitled to relief on this issue.

### V.  CONCLUSION

Therefore, for the reasons stated above, it is hereby

**RECOMMENDED** that Leigh Jesse Quinto's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (DE # 1), be **DENIED**.

The parties will have fourteen days from the date of service of this Order within which to file written objections, if any, for consideration by the assigned United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Miami, Florida, on June 7th, 2010.

_Andrea M. Simonton_
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable Ursula Ungaro
    United States District Judge
All counsel of record