UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-CV-23335

_____

LEIGH JESSE QUINTO,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____

## ORDER ON MOTION TO VACATE SENTENCE

THIS CAUSE is before the Court upon Petitioner Leigh Jesse Quinto's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255.  (D.E. 1.)  The Court referred the Motion to United States Magistrate Judge Andrea Simonton, who, after conducting an evidentiary hearing, filed a Report recommending the Motion be denied.  (D.E. 35.)  Quinto filed objections to the Report.  (D.E. 37.)

THE COURT has reviewed the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

Quinto seeks to vacate his conviction and sentence on the grounds that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel labored under an impermissible conflict by simultaneously representing a government witness who testified against him.

## I. Procedural Background

On May 19, 2006, a grand jury returned an indictment charging Quinto with conspiracy to possess cocaine with intent to distribute and with possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). On November 14, 2006, the petit jury returned a unanimous verdict finding Quinto not guilty as to the conspiracy charge, but guilty as to the substantive possession-with-intent-to-distribute charge. And on February 9, 2007, this Court sentenced Quinto to twenty years' imprisonment (the statutory maximum), three years' supervised release, a five-hundred-thousand dollar fine, and a one-hundred dollar assessment.

Quinto appealed both his conviction and sentence. On appeal, Quinto argued that this court lacked subject matter jurisdiction; that his Fifth Amendment right to a grand jury was violated; that his sentence was procedurally and substantively unreasonable; and, that his Sixth Amendment right to effective assistance of counsel was violated. The United States Court of Appeals for the Eleventh Circuit affirmed the conviction and sentence. The Court of Appeals rejected all of Quinto's arguments, save for his Sixth Amendment argument, which it declined to address because this Court had no opportunity to develop the relevant factual record.

On November 2, 2008, Quinto filed the instant Motion to Vacate his sentence. In the Motion, Quinto argues that several of his constitutional and statutory rights were violated, including: his Sixth Amendment right to effective assistance of counsel at trial;

his right to have a United States District Court Judge (and not a Magistrate Judge) determine whether he would proceed pro se on appeal; and, his Sixth Amendment right to counsel on appeal. (D.E. 2.) This Court referred the Motion to Magistrate Judge Simonton, who, after holding an evidentiary hearing, recommended that this Court reject Quinto's arguments and deny the Motion.

Quinto objects only to Magistrate Judge Simonton's determination that Quinto's Sixth Amendment right to effective assistance of counsel at trial was not violated. Specifically, Quinto maintains that his trial counsel, Fred Haddad, was rendered ineffective because he also represented government witness Michael Schwartz.

Quinto does not object to Magistrate Judge Simonton's remaining determinations. Therefore, having reviewed the same, the Court adopts in full her determinations that: there was no ineffective assistance of trial counsel based on the admission of 404(b) evidence; there was no violation of Quinto's rights regarding the determination that he would proceed pro se on appeal; and, Quinto voluntarily waived his Sixth Amendment right to counsel on appeal.

The Court discusses Quinto's objections below.

## II.  Standard of Review

This Court reviews de novo those portions of a magistrate judge's proposed findings or recommendations regarding a motion to vacate under § 2255 to which timely objections have been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. (Special R. Governing

3

Sec. 2255 Proceedings) 8(b). This Court may accept, reject, or modify, in whole or in part, the findings or recommendations made to which no timely objections have been made. § 636(b)(1).

### III.  Factual Background

The Court adopts the following findings of fact from Magistrate Judge Simonton's Report, to which there were no objections, as supplemented by the underlying trial record. (D.E. 34–36; Case No. 06-CR-20319, D.E. 235, pp. 38–48.)

1. *The Testimony of Michael Schwartz*

Michael Schwartz testified at trial against Quinto on November 8, 2006. His testimony was brief (ten transcript pages) and concerned Quinto's alleged involvement in a conspiracy to distribute cocaine with co-defendant James Wells and others. Quinto was acquitted of this charge (Count I). Schwartz's testimony did not directly concern Quinto's alleged distribution of cocaine on April 27, 2005—the charge on which Quinto was convicted (Count V).

On direct examination, Schwartz testified that he worked at Solid Gold, a "gentlemen's" club; that he once met Quinto through a common acquaintance, club-frequenter and cocaine-dealer Wells; that he once purchased cocaine from Wells outside Quinto's home; and that, in March 2005, he called Wells to obtain cocaine and received a return call from Quinto who later met with Schwartz, but ultimately refused to sell him only fifty-dollars worth of cocaine. The prosecutor attempted to elicit testimony that

4

Schwartz had witnessed Quinto in possession of a bag of cocaine. But Schwartz denied the same. And the prosecutor attempted to impeach Schwartz—his own witness—based upon a prior statement he made to investigators. The impeachment was unsuccessful.

Fred Haddad began his cross-examination of Quinto at the end of the prosecutor's unsuccessful impeachment attempt. It was brief. Haddad elicited testimony regarding Schwartz's responsibilities at the "totally nude" club and not much else. The prosecutor had no redirect examination.

### 2. *Fred Haddad's Representation of Michael Schwartz*

Haddad began representing Schwartz in 2002, when Schwartz was arrested by the State of Florida on cocaine-related charges. Haddad represented Schwartz throughout his state case, which concluded when Schwartz was sentenced to probation on February 11, 2005. However, Haddad's law firm filed a motion for permission to travel on behalf of Schwartz in June 2006—after Quinto was indicted and several months before the cross-examination in the Quinto case.

### 3. *Fred Haddad's Testimony Regarding the Apparent Conflict*

At the evidentiary hearing before Magistrate Judge Simonton, Haddad testified that he had little interaction with Schwartz while representing him in the state criminal proceedings.[1] Haddad saw Schwartz only at calendar calls, was not involved in Schwartz's plea negotiations or cooperation with investigators, and obtained no

---

[1] In her Report, Magistrate Judge Simonton noted that she found Haddad's testimony at the hearing to be credible.

5

confidential or privileged information regarding Schwartz. And Haddad did not learn of Schwartz's interactions with Wells or Quinto during his representation of Schwartz.

Haddad first learned Schwartz was a potential witness against Quinto in May 2006, when he was told so by the prosecutor at Quinto's pretrial detention hearing. Haddad realized the potential for conflict and informed Quinto, but Quinto requested that Haddad continue to represent him.[2] Haddad arranged for the appearance of co-counsel for the purpose of cross-examining Schwartz. But it was Haddad's understanding that Schwartz would not be a significant witness given that Quinto's co-defendants (and alleged co-conspirators) would be testifying against Quinto at trial. And the prosecutor eventually informed Haddad that Schwartz would not be a witness.

Shortly before trial, however, the prosecutor informed Haddad that Schwartz would be a witness and that he, the prosecutor, was authorized to inform Haddad that Schwartz had waived any conflict arising from a potential cross-examination at trial. Thus, Haddad did not believe he was constrained in any way from vigorously cross-examining Schwartz.

At trial, however, Haddad, who has been admitted to the bar for thirty-six years and specializes in criminal defense, made a "calculated" decision to conduct an abbreviated cross-examination. Haddad explained that the jury reacted negatively to Schwartz's direct examination—Schwartz was hedging and the prosecutor unsuccessfully

---

[2] In his briefings, Quinto's counsel argues that Quinto denies being informed of the conflict, but Quinto did not testify or provide an affidavit in support of this claim.

impeached him and then was cut off by the trial judge on Haddad's objection.[3]  And an extensive cross-examination, in Haddad's opinion, only risked opening the door for the prosecutor to successfully examine Schwartz on redirect.  Moreover, Schwartz's drug use, a potential subject for cross-examination, had already been established by the evidence.  Essentially, Haddad testified that, based on the "thousands" of cross-examinations he had conducted, the possible benefits of a more extensive cross-examination of Schwartz were vastly outweighed by the risk.

### IV.  Discussion

The Sixth Amendment guarantees the right to effective assistance of counsel for the defense of criminal prosecutions.  *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

### A

A claim of ineffective assistance of counsel is an attack on the fundamental fairness of the criminal proceeding, which is "the central concern of the writ of habeas corpus."  *See Strickland v. Washington*, 466 U.S. 668, 698 (1984).  Where a federal criminal proceeding is being challenged, a motion for post-conviction relief under § 2255[4]

---

[3] Haddad testified that: "Schwartz was one of the worst witnesses I have ever seen.  A cold record does not begin to show how bad a witness he was" and that "I would have cross examined without hesitation had it not been for the way he testified on direct."  (D.E. 36 p. 31.)

[4] The purpose of § 2255 was to supplant the traditional writ of habeas corpus—at least in the first instance—with a more efficient and convenient statutory process.  *E.g., Boumediene v. Bush*, 553 U.S. 723, 776 (2008).

is the proper procedure. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). This allows the court to develop the factual record regarding the assistance of counsel not usually available on direct appeal. *See id.*

Generally, in order to prevail on a claim of ineffective assistance of counsel under § 2255, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. But in certain cases, where the Sixth Amendment violation is of a sufficient magnitude, the defendant is spared the need of showing a probable effect upon the outcome, and such an effect is presumed. *See Mickens v. Taylor*, 535 U.S. 162, 165 (2001).

For instance, "where assistance of counsel has been denied entirely or during a critical stage of the proceedings ..., the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Id.* (citing *United States v. Cronic*, 466 U.S. 648, 658–59 (1984); *Geders v. United States*, 425 U.S. 80, 91 (1976); *Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963)). And "circumstances of that magnitude" may also arise when the defendant's attorney labors under an "actual conflict of interest." *Mickens*, 535 U.S. at 166–73. This second exception is the centerpiece of Quinto's Motion.[5]

---

[5] Quinto does not contend he is entitled to relief absent this exception and its presumption of prejudice.

**B**

In her report, Magistrate Judge Simonton determined that Quinto failed to demonstrate that Haddad labored under an "actual conflict of interest." This determination was based on several conclusions. The first was that Haddad believed (true or not) that Schwartz had waived any potential conflict and, therefore, did not labor under any divided loyalties with respect to Schwartz's cross-examination. The second was that Haddad had no reasonable, alternative strategy to pursue on cross-examination. And the third was that Haddad possessed no confidential information regarding Schwartz, much less any which would have created a conflict during the cross-examination.

Quinto objects to these conclusions and the determination that Haddad did not labor under an "actual conflict of interest." Quinto contends the Magistrate Judge's application of the law to the facts was wrong because an attorney inherently encounters divided loyalties when cross-examining a former client regardless of any waiver or lack of confidential information and because Haddad did learn of confidential information from Schwartz prior to the cross-examination. The Court disagrees with Quinto. As discussed below, Magistrate Judge Simonton correctly applied the law to the facts of this case.

In her report, Magistrate Judge Simonton explained that the only testimony presented at the evidentiary hearing was that of Fred Haddad, who testified that his cross-examination was not affected by his prior representation of Schwartz and that at the time

of the cross-examination he believed that Schwartz had waived any potential conflict. And because this evidence was uncontroverted, Judge Simonton determined that Quinto failed to demonstrate that the conflict had any effect on Haddad's cross-examination, much less an adverse one. Similarly, Magistrate Judge Simonton explained that Haddad testified he obtained no confidential information during his representation of Schwartz and that this evidence was uncontroverted. On these bases, Magistrate Judge Simonton determined that Quinto failed to demonstrate any "actual conflict of interest." Quinto's objections to this determination are unavailing.

Quinto failed to demonstrate an "actual conflict of interest." In order to do so, a defendant must demonstrate "a conflict *that affected counsel's performance*, as opposed to a mere theoretical division of loyalties." *Mickens*, 535 U.S. at 172 (emphasis in original). And it is necessary "for petitioner to establish that the conflict of interest *adversely* affected his counsel's performance." *Id.* at 173–74 (emphasis added); *see also Hunter v. Dept. of Corr.*, 395 F.3d 1196, 1201–02 (11th Cir. 2005). And in the Eleventh Circuit, in order to establish an adverse effect (and an "actual conflict of interest"), a petitioner must demonstrate: (1) "some plausible alternative defense strategy or tactic that might have been pursued," (2) "that the alternative strategy or tactic was reasonable under the facts," and (3) "some link between the actual conflict and the decision to forgo the alternative strategy of defense." *Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999) (citations and internal quotations omitted).

10

It is the third prong of the test which is the most problematic for Quinto. As Magistrate Judge Simonton correctly determined, the undisputed evidence demonstrates that Haddad labored under the belief no conflict existed because it had been waived by Schwartz and that his relationship with Schwartz did not otherwise affect his cross-examination in any way.

In his objections, Quinto argues that notwithstanding Haddad's testimony an actual conflict existed because Haddad "inherently encountered divided loyalties" by virtue of his simultaneous representation.[6] (D.E. 37 ¶ 5.) Quinto could not more exactly have made a failing argument. The Supreme Court and the Court of Appeals for the Eleventh Circuit have specifically stated that "theoretical divisions of loyalty" and "inherent" conflicts do not—without more—equal "actual conflicts of interest." *Mickens*, 535 U.S. at 172; *Hunter*, 395 F.3d at 1201–02. Thus, even assuming Quinto could establish a reasonable alternative cross-examination strategy, he could not establish any link between the conflict and the decision not to pursue that strategy because it is undisputed that Haddad believed he was not conflicted during the cross-examination. *See, e.g., Hunter v. Dept. of Corr.*, 395 F.3d 1196, 1999–1200 (11th Cir. 2005) (holding that, where a trial counsel is unaware of a conflicting relationship with a witness, a petitioner may not

---

[6] In his objections, Quinto does not challenge Magistrate Judge Simonton's finding that Haddad believed, at the time of the cross-examination, that Schwartz waived any potential conflict. Instead, Quinto notes only that Haddad admitted to initially believing a *Garcia* hearing was necessary. In any event, even had Quinto objected to the finding, there is no evidence to dispute Haddad's testimony that, after the prosecutor informed him of Schwartz's waiver and at the time of the cross-examination, he did not believe a conflict existed.

sidestep the requirement of establishing a link between the conflict and the decision to forgo an alternative strategy by arguing the alternative strategy is inherently in conflict with counsel's loyalties to the witness).

With respect to the second prong, Magistrate Judge Simonton determined that Quinto failed to establish any *reasonable* alternative strategy which Haddad might have pursued on cross-examination.  In his underlying briefings and during the evidentiary hearing, Quinto argued that Haddad could have done much more to attack Schwartz's credibility on cross-examination.  Quinto renews these arguments in his objections. Clearly, Quinto is correct insofar as Haddad could have more vigorously cross-examined Schwartz, but the Court agrees with Magistrate Judge Simonton insofar as Quinto fails to establish that such an alternative strategy would have been reasonable under the circumstances.  The unsupported argument of Quinto's counsel is insufficient in the face of the Haddad's undisputed testimony to demonstrate that a *reasonable* alternative strategy existed.

Haddad's undisputed testimony was that, based on the weakness of Schwartz's testimony against Quinto, Schwartz's own admissions of drug use, and the jury's reaction to the testimony, in his opinion, an extensive cross-examination posed the risk of a more successful redirect without offering much added benefit.[7]  And Quinto's only counter to this evidence is the argument of his counsel that Haddad was wrong and could have done

---

[7] Haddad's testimony is bolstered by Quinto's acquittal on the conspiracy charge at which Schwartz's testimony was directed.

more. Indeed, in his objections, Quinto does nothing more than cross-reference the prior arguments of counsel.

Finally, the Court agrees with Magistrate Judge Simonton's conclusion that no evidence of record suggests Haddad obtained any confidential information during his representation of Schwartz, but, in fact, Haddad's undisputed testimony evidences that he had not. Quinto objects to this conclusion, arguing that Haddad's arrangement for the appearance of co-counsel and the reference in the notice of appearance to the erection of a "Chinese Wall" regarding any potential conflict makes it obvious that Haddad did possess confidential information. Quinto offers no legal support for this position, and evidence of such a preventative measure is simply insufficient to counter Haddad's matter-of-fact testimony that he was not in possession of confidential information.

## V. Conclusion

Upon independent review of the Report and consideration of the objections, the Court agrees in full with the determinations and recommendations of Magistrate Judge Simonton. Accordingly, it is

ORDERED AND ADJUDGED that United States Magistrate Judge Simonton's Report of June 7, 2010 is RATIFIED, AFFIRMED and ADOPTED. Leigh Jesse Quinto's Motion to Vacate Sentence Pursuant (D.E. 1) is DENIED. It if further

ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case.

DONE AND ORDERED in Chambers in Miami, Florida this 19th day of January, 2011.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE